# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **ROBIN RUTENBERG** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| v. | ] |
| | ]   CV-10-BE-3214-E |
| **STANDARD INSURANCE COMPANY,** | ] |
| | ] |
| **Defendant.** | ] |
| | ] |
| | ] |
| | ] |

## MEMORANDUM OPINION

This ERISA matter is before the court on "Plaintiff's Motion for Summary Judgment Regarding which Policy is Applicable with Submissions" (doc. 15); Plaintiff's "Motion to Reform Contract Pursuant to 29 U.S.C. 1132(a)(1)(B)" (doc. 20); and "Standard Insurance Company's Motion for Judgment on the Record" (doc. 34).  For the reasons stated in this Memorandum Opinion, the court finds that the Plaintiff's motions are due to be DENIED and that Defendant's Motion for Judgment on the Record is due to be GRANTED.

## I.  PROCEDURAL HISTORY

The Plaintiff, Robin Rutenberg, filed this case (doc. 1-1) in the Circuit Court of Etowah County, Alabama, alleging breach of a contract for disability insurance.  On November 23, 2010, the Defendant, Standard Insurance Company, removed the case to this court.  Rutenberg filed a motion to remand (doc. 4), which the court denied (doc. 12) after holding a hearing on the matter, finding that the court has jurisdiction based on diversity and federal question under ERISA.

1

The court issued a scheduling order (doc. 14) setting deadlines such as the due dates for amendments to pleadings and submissions for a judgment on the record.  On July 6, 2011, Rutenberg filed a Motion to Allow Amended Complaint (doc. 26), which the court denied for failure to show cause why it should grant leave to amend forty days after the deadline to amend and 121 days after the court ruled the case arises under ERISA.

On May 2, 2011, Rutenberg filed a motion for summary judgment regarding which policy is applicable in this matter (doc. 15), and a month later, filed a motion to reform the contract (doc. 20).   On August 25, 2011, Rutenberg filed a motion for discovery (doc. 29), which the court denied as untimely.

On September 23, 2011, Standard filed a motion for judgment as a matter of law (doc. 34).  After that filing, the court held a status conference in which the parties communicated their desire to pursue settlement.  The court suspended the scheduling order deadlines to allow them to do so.  Upon receiving communications that the settlement negotiations were not successful, the court set a new deadline for Rutenberg to respond to the motion for judgment as a matter of law, and also allowed Standard to file a reply brief.

On September 27, 2011, Rutenberg filed a consent to submission on the record (doc. 36).

## II.  FACTS

The following facts apply to all motions.  The court notes that Rutenberg denies certain facts set forth in Standard's motion without explanation or a supporting cite to evidence, contrary to the requirements of this court's Appendix II and section V.a. of the scheduling order; therefore, the court does not consider those facts properly disputed.  *See* Doc. 39, at 3.

Rutenberg was the Accounting Manager for Simply Fashions for nine years, and earned

$3,700 per month at the time she terminated her employment. While employed there, she had two separate disability policies that Standard issued: (1) an individual disability income policy, policy number XB774520 with effective date January 1, 2002, that would pay a maximum of $500 per month if she became disabled; and (2) a group long-term disability policy, policy number 645223-A with effective date February 1, 2006, that would pay up to 60 percent of her pre-disability income if she became disabled.  Both policies stated that they provided benefits under the Employee Retirement Income Security Act of 1974 (ERISA).  Rutenberg was aware of the second disability policy, because she recalled receiving the Standard long-term group disability policy in May of 2006 in the mail. Standard became the disability insurer in 2006, the Standard policy replacing a previous group policy issued through Fortis Benefits. However, Rutenberg did not recall applying for the individual disability policy, and was unaware that she had a disability policy that would pay her $500 per month.

*Individual Disability Income Policy XB774520*

Although she does not recall applying for an individual disability income policy, on December 14, 2001, Rutenberg did indeed do so through her employer, Simply Fashions, requesting a maximum monthly benefit amount of $500.  Rutenberg acknowledges that the application contains her signature.  As a result of Rutenberg's application, Standard issued to her an individual "Executive Benefits Income Protection Policy," policy number XB774520, with an effective date of January 1, 2002.  According to Standard's records, the company mailed this policy to Simply Fashions on April 15, 2002 for delivery to Rutenberg.  On July 3, 2002, Simply Fashions signed and dated the Receipt Agreement and exhibit A, indicating that the company agreed to deliver the policy and summary plan description for that individual policy to Rutenberg

3

within ten days.  Standard received the signed and dated Receipt Agreement and exhibit A on July 30, 2002.  The transmittal letter accompanying the policy informed Rutenberg that coverage under the policy is portable:  "One important feature, full portability, allows you to maintain coverage and preserve the group-discounted rates of this policy by agreeing to pay the premiums as they become due, in the event you leave your employer-sponsored program." (Doc. 17-6).

Indeed, the policy contains the following provisions:

> **PREMIUMS, POLICY TERMINATION AND REINSTATEMENT**
> **Policy Termination -** The Policy ends automatically on the earliest of:
>     a.  The Premium Due Date of any unpaid premium that is not paid by the end of the Grace Period.
>     b.  The date you die.
>     c.  The Termination Date, unless:
>         1.  You are Disabled on that date; or
>         2.  The Policy is renewed under the **Renewable Option After The Termination Date** provision.  In that event, the Policy will end automatically on the date you are no longer actively and regularly employed at least 30 hours each week, unless you are Disabled on that date.
> ***
>
> **RENEWABLE OPTION AFTER THE TERMINATION DATE**
> **Renewable Option** - The Owner may request in writing that the Policy continue beyond the Termination Date. We must receive the request at our home office at least 30 days before the termination Date.  Also, the Policy must be in force with all due premiums paid on the date we receive the request.  The continuation is subject to our approval.
>
> To continue the Policy after the Termination Date, we will require satisfactory proof that you:
>     a.  Are actively and regularly employed for at least 30 hours each week; and
>     b.  Are not Disabled at the time we receive the request at our home office.
>
> Subject to the **Policy Termination** provision, continuation under this provision will automatically end when you are not longer actively and regularly employed for at least 30 hours each week.  We have the right to require satisfactory proof at reasonable intervals of your continued employment.  Policy continuation

under this provision will end automatically if you fail to provide us such proof.
***

(Doc. 17-2, at pp. 20, 22, & 23) (emphasis in original).  However, just as Rutenberg does not recall applying for the policy, she does not recall receiving the individual policy or the accompanying letter, and asserts that Simply Fashions did not deliver them to her.

*Group Long-Term Disability Policy 645223-A*

The group policy issued to policyholder Simply Fashion Stores, Ltd had an effective date of February 1, 2006 with a monthly benefit of sixty percent of the first $5,000 of the employee's pre-disability earnings, with a maximum monthly benefit of $3,000.  That "Certificate and Summary Plan Description" of that policy provided to employees, including Rutenberg, states the Policy Number as 645223-A and includes the following relevant provisions:

> **BECOMING INSURED**
> To become insured you must be a Member . . . .
> You are a Member if you are:
> > 2.  A regular partner or salaried employee of the Employer;
> > 2.  Actively At Work at least 40 hours each week (for purposes of the Member definition, Actively At Work will include regularly scheduled days off, holidays, or vacation days, so long as you are capable of Active Work on those days); and
> > 3.  A citizen or resident of the United States or Canada.
>
> ****
>
> **WHEN YOUR INSURANCE ENDS**
> Your insurance ends automatically on the earliest of:
> 1.  The date the last period ends for which a premium contribution was made for your insurance.
> 2.  The date the Group Policy terminates.
> 3.  The date your employment terminates.
> 4.  The date you cease to be a Member.  However, your insurance will be continued during the following periods when you are absent from Active Work, unless it ends under any of the above.  ***

Doc. 18-1, at 9, 11, & 12. The policy provides for reinstatement, but only for those who qualify again as a new Member.  It contains no provision for converting the group

policy to an individual disability policy upon termination of employment.

Group Policy 645223-A which Standard provided to Simply Fashions also includes the following provision:

> **ALLOCATION OF AUTHORITY**
> Except for those functions which the Group Policy specifically reserves to the Policyholder or Employer, we have full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy. Our authority includes, but is not limited to:
> \*\*\*
> 3.  The right to determine:
>      a.  Eligibility for insurance;
>      b.  Entitlement to benefits;
>      c.  The amount of benefits payable; and
>      d.  The sufficiency and the amount of information we may
> reasonably require to determine a., b., or c. above.
> \*\*\*

Doc. 24-4, at 31.  Simply Fashions provided this group insurance coverage at no cost to its employees.  Rutenberg acknowledges receiving "a new Standard Long Term Disability policy shortly after 5/6/06 through the mail [that paid] 60 % of my income if I became disabled," so she acknowledges receiving this policy.  Doc. 15-1.

In November 2007, Rutenberg terminated her employment with Simply Fashions for personal reasons; she does not assert that she was disabled at the termination of her employment. Pursuant to the terms of the group disability insurance contract, her coverage ended when her employment ended.

On February 1, 2008, Simply Fashions terminated the long term group disability coverage with Standard.

6

*Post-Termination Communication with Standard*

As noted above, Rutenberg terminated her employment with Simply Fashions in November of 2007 for personal reasons and not because she was disabled at that time. Simply Fashions did not discuss the termination's effect on her disability insurance or otherwise discuss her disability insurance at the time of her termination. Rutenberg received a letter from Standard dated January 18, 2008. At the top right hand portion of the letter, it listed "Policy Number XB774520," and stated in part:

> We have been informed that you are not longer participating in the Executive Benefits disability program sponsored by your employer RUTENBERG, ROBIN L XRE127241. You were issued an *individual disability policy* under this program. While your policy is no longer being billed through your employer, you have the opportunity to retain this valuable coverage by simply agreeing to pay premiums on an individual basis. Please consider this option carefully. This policy retains its original provisions and premium discount offered through the employer sponsored plan.
> \*\*\*

(Doc. 15-3) (emphasis added).

Rutenberg called the number on the letter and accepted the offer of continuing disability insurance, paying the premiums through on-line banking. Although the letter referenced the *individual* disability policy and did not specifically state the amount of disability benefits, Rutenberg understood that she was retaining the disability policy that would pay sixty percent of her former salary. In other words, she understood that she was converting the group disability policy to an individual one. As a basis for that understanding, she does not point the court to any conversation with Standard or any document other than the January 18, 2008 letter. When she arranged to continue the individual disability policy, she did not receive a copy of the policy at that time and did not ask at that time for a copy of the disability policy she was continuing.

On September 1, 2008, Rutenberg became disabled with gastroparesis complicated by surgeries for hemorrhoid surgery and a hiatal hernia; Standard does not dispute that she qualifies as disabled as of that date.  She initially applied with Standard on September 2, 2009 for long-term disability benefits, claiming disability as of January of 2009 and listing the policy number under which she was claiming benefits as XB774520 – the individual policy number.  After initially denying her claim, Standard re-opened her claim.  Eventually, in April of 2010, Standard approved her request for disability benefits with a September 1, 2008 disability date, providing the maximum monthly benefit of $500.  Standard sent Rutenberg a check for $8,016.65 for payment of benefits from November 30, 2008 through March 31, 2010.   On April 22, 2010, Rutenberg also received a check for $515.48, which represented a premium refund for the period from September 1, 2008 —  the beginning of her disability —  to April 19, 2010.

Because Rutenberg had understood that she would be entitled to sixty percent of her former salary, on April 15, 2010, she called Standard to ask why she had received less, and she left a voicemail. Jeff Simmons returned her call and explained that her policy provided a monthly benefit of $500 per month.  On April 19, 2010, Mike Dalby from Standard called Rutenberg to follow up on that conversation, explaining that she only had insurance coverage under the individual disability insurance policy.  He also confirmed the amount of  premiums that she was paying, $73.64 quarterly, which amount was much less than Rutenberg had paid while employed.  Rutenberg acknowledged that she always thought the premium amount was low.

On May 5, 2010, Rutenberg called Standard and asked for a copy of the disability policy.  Rutenberg asserts that she asked Standard for proof of what insurance she had, but Standard's records reflect that she requested a copy of the policy page that reflects her premiums.  Mr.

Dalby, who received the call, could not himself provide what she requested so he transferred Rutenberg to Standard's policy services department. That department has no record of Rutenberg's request. In any case, Standard did not provide Rutenberg with a duplicate copy of her individual disability policy in May 2010. However, on May 5, 2010, Standard did provide her via fax with a copy of the letter dated January 18, 2008. That letter provided Rutenberg with a premium amount but did not provide the monthly benefit amount. Rutenberg also called the insurance agent for Simply Fashions and asked for a copy of the policy, which that agent did not provide.

In a letter dated June 18, 2010, Rutenberg's attorney requested a copy of her individual disability policy, which Standard sent to Rutenberg. Standard received correspondence from Rutenberg's attorney, asserting that she is entitled to disability benefits under the long-term group disability policy, policy number 645223-A, which pays benefits up to sixty percent of the predisability benefits. Standard informed her counsel that her coverage under that policy terminated when her employment with Simply Fashions terminated in November of 2007, and that she is not entitled to benefits under that group policy.

### III. DISCUSSION

**A. Motion to Reform Contract**

In this motion, Plaintiff, Robin Rutenberg, requests that the court reform the *individual* disability insurance contract made the basis of this suit to provide Rutenberg the disability benefits to which she understood she was entitled: 60 percent of her pre-disability earnings. Rutenberg cites the recent Supreme Court case of *Cigna Corporation v. Amara,* ___ U.S. _____, 131 S. Ct. 1866 (May 16, 2011) as "authoriz[ing] reformation of the contract pursuant to the

9

'other appropriate equitable relief' clause in 29 U.S.C. § 1132(a)(1)(B)." (Doc. 20, at 1). The court disagrees with that characterization of *Cigna*'s holding. Although 29 U.S.C. § 1132(a)(1)(B) provides that a plaintiff may bring an action to "recover benefits ... to enforce his rights ... or to clarify his rights to future benefits," it does not authorize a court to reform the contract by altering the original terms. Rather, as the Supreme Court explained in *Cigna*, "[t]he statutory language speaks of '*enforc[ing]*' the *'terms of the plan,'* not of changing them . . .we have found nothing suggesting that the provision authorizes a court to alter those terms ... where that change, akin to the reform of a contract, seems less like the simple enforcement of a contract as written and more like an equitable remedy." 131 S. Ct. at 1877. Thus, the Supreme Court specifically held that a court *may not reform a contract under the section codified at § 1132(a)(1)(B)*, although it proceeded to award equitable relief *under another provision* to address ERISA violations.

The request in the instant case is brought pursuant to § 1132(a)(1)(B) and the action requested is precisely what § 1132(a)(1)(B) does not authorize, according to the Supreme Court's holding in *Cigna*: an alteration of the terms of the contract more akin to an equitable remedy. Rutenberg does not request equitable relief under another provision, and does not allege fraudulent conduct on the part of Standard. Consistent with the Supreme Court's direction, the court finds that the motion to reform is due to be DENIED.

**B.  Cross-Motions**

The remaining two motions are styled differently – Rutenberg's motion purports to be a motion for summary judgment and Standard's motion purports to be a motion for judgment on the record. Because both parties have consented to a submission on the record, the court

DEEMS Rutenberg's motion for summary judgment to be a motion for judgment on the record as well. Both motions raise the same key issue: which policy governs? This case is a tale of two policies: an individual disability policy that pays a maximum of $500 per month and a group disability policy that, if applicable, pays more. Standard says the first is the only policy that remains viable, while Rutenberg disagrees and claims the second should govern instead. The court agrees with Standard for the reasons stated below.

Both of the insurance policies in question purport to be subject to ERISA and to provide rights and protections that ERISA required. Although her employment ended in 2007, Rutenberg continued coverage under the second policy – her individual disability policy, and acknowledges that she received benefits under that policy. She now claims, however, that instead of receiving the $500 monthly benefits under the second policy, she should receive disability benefits under the first policy, the group policy. That policy was subject to ERISA and, where applicable, provided benefits of 60 percent of pre-disability income. Although Standard granted Rutenberg's claims for benefits under the second, individual policy, it denied her claim for benefits under the group policy. Because Rutenberg challenges the decision of the claim administrator for a policy that is subject to ERISA, this court must follow the ERISA standard of review.

Under the ERISA standard of review, the court takes the first step of using a *de novo* standard of review to determine whether the administrator's decision to deny benefits was "wrong," i.e., whether "the court disagrees with the administrator's decision." *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1196 (11th Cir. 2010) (quoting *Williams v. BellSouth Telecomms., Inc.* 373 F.3d 1132, 1138 (11th Cir. 2004), overruled on other grounds by *Doyle v Liberty Life*

*Assurance Co. of Boston*, 542 F.3d 1352 (11th Cir. 2008)).  If the plaintiff establishes that the decision is "wrong," then the court proceeds to other steps to determine, for example, whether the plan documents give discretion to the plan administrator to make benefit determination, and if so, whether "reasonable" grounds supported it under the deferential arbitrary and capricious standard.  If, however, the plaintiff fails to establish that the decision is "wrong" at step one, the inquiry ends and the court affirms the administrator's decision.  *Capone*, 592 F.3d at 1196.

In the instant case, the court finds that the analysis stops after step one.  According to the clear terms of the group disability policy, that policy automatically terminated when Rutenberg's employment terminated.  The group disability policy contained no provision for continuing coverage after the termination of employment.  Therefore, the administrator correctly denied Rutenberg's claim for disability benefits under that policy.

Rutenberg argues that the letter she received in the mail from Standard after the termination of her employment, offering to allow her to retain disability insurance, somehow converted her *group* disability insurance into individual disability insurance.  This argument simply does not stand. As noted above, one reason is that the group disability policy contains no provision that allows such a conversion.  Unlike Rutenberg's *individual* disability policy, the group policy contains no provision of portability in the event she leaves her employment.  Rather, it ends automatically when employment terminates.  Period. Although Rutenberg argues that the terms of the group contract are ambiguous, the court disagrees.  The court finds as a matter of law that the terms of the group disability insurance contract clearly and unambiguously provide that the policy terminates when employment ends.

Rutenberg argues, however, that Standard's post-termination letter to her about

continuing disability benefits somehow creates an ambiguity in the terms of the group disability policy. The court need not analyze whether a letter could raise ambiguities that change the terms of the group disability contract. Even assuming *arguendo* that it could, no reasonable reading of the January 18, 2008 would indicate that it refers to the group policy. Rather, the letter specifically stated the relevant policy number – XB774520 – and referred to the "individual disability policy" under the "Executive Benefits disability program." Therefore, if Rutenberg misunderstood what disability policy the letter referenced and what amount of disability benefits were payable under the referenced policy, that misunderstanding was not the fault of the letter, which adequately identified the policy.

The court notes that, significantly, Rutenberg points to no other communication with Standard that affects the group policy terms; she raises no misrepresentation or intentional fraudulent promises. Thus, the only communication upon which she relies to change the terms of the group policy is the January 18, 2008 letter, which does not reference the group policy at all, but instead, specifically refers to the *individual* disability policy by policy number which was originally under the "Executive Benefits disability program."

Yet, Rutenberg insists that the letter should have provided even more information, such as spelling out the amount of benefits that the policy provided. In so arguing, she attempts to shift the blame away from herself and her own role in the misunderstanding: her failure to remember that she had an individual disability policy; her failure to note the letter's reference to an *individual* disability policy and the discrepancy between the policy number referenced in the letter and the group policy number; her failure to ask questions about her disability insurance options at the time she terminated her job; and her failure to ask questions about the amount of

disability benefits provided by policy XB774520 at the time she received the January 18, 2008 letter, if she did not have a copy of the policy to confirm those benefits. In any event, when she attempts to shift the blame to Standard, she provides no case law or ERISA statutory law supporting her argument that Standard had an obligation to do more than identify the policy subject to continuation.   This court is unaware of any such law.

      Rutenberg's final arguments focus on Standard's failure to provide her with a copy of her individual policy at two points: at the time the policy was issued and shortly after she received her first disability payments.  The court first notes that the issue of whether Rutenberg received or did not receive a copy of the *individual* disability policy upon its issuance or after receiving disability payments under that policy does not affect her entitlement to benefits under the separate *group* disability policy.  If Rutenberg is arguing that her failure to receive a copy of the individual policy somehow supports her belief that the January 18, 2008 letter referred to the group policy, that argument makes no sense.  The group policy, which she has never denied having, contained a different policy number than the number on the letter, and any attempt to compare the two would have revealed the discrepancy.   However, the court reiterates that Rutenberg's misunderstanding of the letter does not affect the unambiguous terms of the group disability policy. *See Zurich Am. Ins. Co. v. O'Hara,* 604 F.3d 1232, 1236 (11th Cir. 2010) (stating  "[b]ecause ERISA's primary purpose is to ensure the integrity of the written, bargained-for benefit plans, the Plan must be enforced as written unless the Plan conflicts with the policies underlying ERISA or application of the common law is necessary to effectuate the purposes of ERISA"); *Alday v. Container Corp. of Am.,* 906 F.2d 660, 665-6 (11th Cir. 1990) (holding that when the plan documents "unambiguously set out the rights of the parties . . . there is no need to

refer to other communications between the parties to determine the parties' intent.").

For all of these reasons, the court finds on *de novo* review that the claims decision was correct. Therefore, the analysis ends, and the court affirms the claims administrator's denial of Rutenberg's claim for disability benefits under group policy 645223-A. Consistent with that ruling, the court finds that Rutenberg's motion, which it deems to be a motion for judgment on the record, is due to be DENIED, and Standard's motion is due to be GRANTED.

*Alternatively*, assuming *arguendo* that the claims decision was *de novo* wrong, the court finds that the plan documents for the group policy 645223-A provide Standard with discretionary authority to interpret and construe its terms; that ERISA's arbitrary and capricious standard applies; that Standard's decision to deny Rutenberg's claim was supported by reasonable grounds for the reasons stated above; and that its decision was not arbitrary or capricious. Therefore, the court affirms the administrator's decision. Consistent with that alternative ruling, the court finds that Rutenberg's motion, which it deems to be a motion for judgment on the record, is due to be DENIED, and Standard's motion is due to be GRANTED.

## IV.  CONCLUSION

For the reasons stated above, the court finds

- that the Plaintiff's motion to reform contract is due to be DENIED;

- that the claims administrator's decision was not *de novo* wrong, and thus, that decision is due to be affirmed;

- that Plaintiff's motion for summary judgment, which the court deems to be a motion for judgment on the record, is due to be DENIED;

- that the Defendant's motion for judgment on the record is due to be GRANTED and thus,

JUDGMENT is due to be ENTERED against the Plaintiff and in favor of the Defendant;

- *as an alternative ruling* – assuming *arguendo* Standard's decision were *de novo* wrong – that it was vested with discretion in reviewing claims; that ERISA's arbitrary and capricious standard applies; that Standard's decision to deny Rutenberg's claim was supported by reasonable grounds for the reasons stated above; and that its decision was not arbitrary or capricious.

The court will enter a separate Order consistent with this Memorandum Opinion.

Dated this 23rd day of March, 2012.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE